UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRAVIS ORSO | * | CIVIL ACTION |
| VERSUS | * | NO. 21-2022 |
| SHERIFF CRAIG WEBRE, ET AL. | * | SECTION "I" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Travis Orso, a pretrial detainee housed in the Lafourche Parish Correctional Complex ("LPCC"), filed this *pro se* and *in forma pauperis* prisoner civil rights suit under 42 U.S.C. § 1983 against defendants Lafourche Parish Sheriff Craig Webre, Warden Cantrell Davis, Assistant Warden Karla Beck, and Lieutenant Stanley Jones. ECF Nos. 3, 4, 5. Plaintiff alleges that Defendants failed to investigate, failed to train and supervise, and were deliberately indifferent to his serious medical needs. This matter was referred to the undersigned magistrate judge for a Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.2(A).

Having considered the record, including Plaintiff's Complaint, § 1983 Fact Statement, *Spears* hearing testimony, medical records, and the applicable law, the undersigned recommends that each of Plaintiff's claims against Defendants Sheriff Craig Webre, Warden Cantrell Davis, Assistant Warden Karla Beck, and Lieutenant Stanley Jones be DISMISSED WITH PREJUDICE.

## I.    BACKGROUND

### A.    Factual Allegations in the Complaint and § 1983 Fact Statement

Plaintiff was arrested on May 22, 2022 and transferred to Lafourche Parish Correctional Complex ("LPCC") for pretrial detention. ECF No. 3. On October 29, 2020, Plaintiff was involved in a physical altercation among inmates after a Caucasian inmate (Roland Bruce) had an argument with an African American inmate (Leon Cammack) who was with another African

American inmate (Malik Smith).  ECF No. 3, ¶¶1-2, at 6.  After going to Cell 2 to speak with someone, Plaintiff noticed that the tier had become quiet.  He saw a crowd of black inmates looking into Cell 1, so Plaintiff entered Cell 1 and saw Cammack and Smith standing over Bruce, who was slumped against the wall on the floor.   Orso noticed that Bruce's mouth was bloody as if he had been hit in the mouth.  Plaintiff attempted to pick Bruce up from the floor and was punched by Smith.  Plaintiff fell against the metal bunk and went unconscious.  *Id*. at ¶¶ 2-3.  He awoke to find his shirt bloody.  *Id*. at ¶ 4.

When he came to, Plaintiff noticed Officer Eric Moses walking toward Cell 1.  *Id*.  Officer Moses moved everyone away and locked the cell door with Plaintiff and Bruce inside.  *Id*. at 6, ¶4.  When more officers arrived, Plaintiff and Bruce were taken to a room where Nurse Sara Autumn was waiting.  *Id*. at ¶5.  Plaintiff claims that, contrary to the incident report, he was not escorted to the nurse by Lt. Stanley Jones.  *Id*. at 7, ¶6.  Instead, Lt. Jones showed up later with a backpack on his shoulder and asked the inmates what happened.   *Id*. at ¶8.  Plaintiff told Lt. Jones that the fight started earlier that afternoon at pill call when Smith would not move out of the way because he was masturbating over the nurse on the other side of the door.  *Id*. at ¶9.  Bruce complained that his head hurt, and the plate in his head must have slipped as a result of being punched and kicked.  *Id.* at ¶ 8.  Without addressing Smith's masturbating during pill call,  Lt. Jones only stated that Plaintiff and Bruce did not need medical attention or to go to the hospital.  *Id*. at ¶¶ 9-10.  When Plaintiff and Bruce asked for Tylenol or Ibuprofen, Nurse Autumn denied their requests.  *Id*. at 8, ¶11.  Plaintiff claims that Lt. Jones' comment constituted a denial of medical care. *Id.* at 9, ¶ 19.

The incident report dated October 29, 2020, indicated that there were 15 other inmates involved in the fight in Cell 1.  *Id.* at 8, ¶13.  The 15 other inmates were never identified nor was their involvement clarified.  *Id.* at 9, ¶16.  Plaintiff asserts that all the inmates involved in the

altercation besides himself and Bruce were black and were not fighting amongst each other.  *Id.* at 8, ¶ 13.  Plaintiff filed a grievance on November 22, 2020, believing the incident with two white inmates beat unconscious by black inmates "should have been thoroughly investigated, not  swept under the rug."  *Id.* at ¶14.  Plaintiff contends that this was a racially motivated gang fight, which was not reflected in the incident report.  *Id.* at 9, ¶17.  The incident report failed to mention anyone except Plaintiff, Bruce, Smith, and Cammack, and only the four of them were placed in lockdown or punished.  *Id.* at ¶15-¶16.  Plaintiff alleges that the administration failed to investigate and covered up the incident despite its serious nature.  *Id.* at ¶17.  He claims that his rights have been violated by the "conspiracy of silence" by the administration and Sheriff.  *Id.* at ¶18.

Plaintiff includes summaries of his first, second, and third step Administrative Review Process ("ARP") grievances about the October 29, 2020 incident.  ECF No. 3, at 4–5.  Although Plaintiff states that he filed first grievance within the 30-day time period set forth in the LPCC Handbook, he states Lt. Brett Exnicious deemed his claim untimely.  ECF 3, at 4.  Plaintiff did not receive responses to either his second or third step grievances.  *Id.* at 5.

### B. *Spears* **Hearing Testimony**

On March 25, 2022, I conducted a telephone conference in this matter, with Plaintiff appearing *pro se*.  Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny.

Plaintiff reiterated the information in his complaint as to the failure to investigate and take corrective measures, failure to train and supervise subordinates, and denial of medical care.  Plaintiff clarified that he did not go into cell 1 on October 30th to engage in violence, only to pick up an unconscious Bruce.  He also confirmed that he did not attempt to alert the guards of the

attack on Bruce before entering cell 1. Plaintiff chose not to notify guards before entering Cell 1 that night because the guards had not done anything to help him in the past. Plaintiff had reported threats from Malik Smith months earlier.

Plaintiff testified that he and Bruce were taken by an unknown officer out of Cell 1 and to the triage area, where they waited ten to fifteen minutes to see Nurse Autumn. Lt. Jones arrived at triage later and told Nurse Sarah Autumn that neither Plaintiff nor Bruce needed to go to the hospital or receive medical care. At this time, Plaintiff's neck was in excruciating pain. Nurse Autumn looked into Plaintiff's eyes with a light and informed him that he did not need to go to the doctor. He received three stitches to his face but claims that neither Plaintiff nor Bruce received Tylenol upon request.

Plaintiff testified that he does not have knowledge of Lt. Jones' involvement in the denial of medical care other than Jones' discussion with Nurse Autumn. As to Jones' role in the investigation and corrective action, Plaintiff testified that, while Plaintiff and Bruce were in the triage, Jones went into the dorm and told Plaintiff's attackers that he was proud of them. Plaintiff submitted statements from other witnesses who reported the statement. Plaintiff has no knowledge of Jones' involvement in the investigation or corrective action other than Jones' alleged approval of the attack.

Orso testified that Sheriff Craig Webre, Warden Cantrell Davis, and Assistant Warden Karla Beck were not, to his knowledge, present on the night of the altercation. Plaintiff also testified that he has no knowledge that Webre, Davis, and Beck played any role in the denial of medical care. He concedes that Webre has not employed a policy to prevent guards from fulfilling their duties. Nor does Plaintiff assert that Davis or Beck have employed such a policy. Plaintiff has no knowledge or documentation of any involvement from Webre, Davis, or Beck in this matter.

4

## II.    LEGAL STANDARDS

### A.  Statutorily Required Screening

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[1]  A prisoner's *in forma* pauperis complaint that fails to state a claim may be dismissed *sua sponte* at any time if the court determines that the complaint is frivolous or malicious.[2]  A claim is frivolous if it "lacks an arguable basis in law or fact."[3]  A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[4]  A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . .  [or] rise to the level of the irrational or wholly incredible . . . ."[5]  A court may not dismiss a claim simply because the facts are "unlikely."[6]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[7]  In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim which is dismissed under one rule does not "invariably run afoul" of the other.[8]  If an

---

[1] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F.3d 578, 579–0 (5th Cir. 1998).

[2] 28 U.S.C. § 1915(e)(2)(i)–(ii); 42 U.S.C. § 1997e(c)(1); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

[3] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[4] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[5] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (citation omitted).

[6] *Id.*

[7] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[8] *Mabus*, 976 F. 2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d) (current version at 28 U.S.C. § 1915(e))).

*in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[9] "[W]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[10]

### B. The *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[11]   The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[12]   "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[13]  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e).[14]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[15]

The court may make only limited credibility determinations in a *Spears* hearing and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.[16]   "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical

---

[9] *Id.*
[10] *Id.*
[11] *Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989).
[12] *Id.*
[13] *Davis,* 157 F.3d at 1005–06.
[14] *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).
[15] *Spears*, 766 F.2d at 182.
[16] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992); *Wilson*, 926 F.2d at 482).

records to refute a plaintiff's testimony at a *Spears* hearing."[17]   Medical records of sick calls, examinations, diagnoses, and medications may, however, rebut allegations of deliberate indifference.[18]

## III.   LAW AND ANALYSIS

### A.   Required Elements of § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[19]

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[20]   Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[21]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;

(2) that occurred under color of state law; and

(3) was caused by a state actor.[22]

---

[17] *Id.* (citing *Wilson*, 926 F.2d at 482; *Williams v. Luna*, 909 F.2d 121, 124 (5th Cir. 1990)).
[18] *Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Bejaran v. Cruz*, 79 F. App'x 73, 74 (5th Cir. 2003))).
[19] 42 U.S.C. § 1983.
[20] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).
[21] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[22] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

In this case, I recommend that Plaintiff's complaint, as expounded by his *Spears* testimony explaining the factual basis of his claims, be dismissed with prejudice under 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1).[23]  His allegations fail to establish a cognizable § 1983 claim of violation of constitutional rights, even under the broadest reading of his claims.[24]

### B.  Defendants Sheriff Webre, Warden Davis, and Assistant Warden Beck

Plaintiff named Sheriff Webre, Warden Davis, and Assistant Warden Beck as defendants based solely on their supervisory positions.  Plaintiff testified at the *Spears* hearing that Webre, Davis, and Beck were not personally involved in his denial of medical care.  Further, Plaintiff testified that he has no knowledge of any involvement of the supervisory defendants in the investigation or corrective actions undertaken after the incident.  Indeed, Plaintiff neither saw nor spoke to Webre, Davis, or Beck.  Rather, he named these three defendants based solely on their supervisory responsibilities over the facility.

To hold a defendant personally liable under § 1983, plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation."[25]  Plaintiff has failed to establish that Webre, Davis, and Beck were

---

[23] Although it appears that Plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) (ECF No. 1, at 2 (Section II (A) & (B))), that is an affirmative defense and is not a proper basis for *sua sponte* dismissal after service and answer.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *e.g.*, *Hicks v. Garcia*, 372 F. App'x 557, 557–58 (5th Cir. 2010); *see also Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002) (stating exhaustion of administrative remedies is now required for all actions brought with respect to prison conditions whether under § 1983 or other federal law); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (holding that an inmate must exhaust available administrative remedies even if administrative remedy does not provide requested relief).

[24] The court must "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . .'" *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

[25] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1114–15.

personally involved in any acts causing the alleged deprivation of his constitutional rights.  He further fails to allege that a causal connection exists between any act of Webre, Davis, or Beck and the alleged constitutional violations.

There is no respondeat superior liability under section 1983.[26]  Thus, Defendants Webre, Davis and Beck cannot be held liable under § 1983 pursuant to a theory of respondeat superior simply because the persons overseeing Plaintiff's detention were in their employ or under their supervision.[27]  "A supervisory official may be held liable for his subordinates' actions under § 1983 only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.[28]  To the extent Plaintiff is purporting to assert claims against Sheriff Webre, Warden Davis, or Assistant Warden Beck in their official capacity, such "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."[29]  In other words, an official capacity suit is a claim against the local governmental body itself.  However, as the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.[30]

[26] *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *accord Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1114–15 (5th Cir. 2006).
[27] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983).
[28] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978); *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).
[29] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).
[30] *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citations and quotation omitted).

9

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[31]  Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights.[32]  Additionally, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority."[33]

Plaintiff has not alleged that his constitutional rights were violated as a result of any policy or custom, much less has he identified any alleged policy or custom.  Nor does Plaintiff allege that Webre, Davis, or Beck served as the policymaker for any policy at issue.  Plaintiff has not referenced any order, training, or other policy implemented by the supervisory defendants that factored into the events about which he complains.[34]  In short, Plaintiff has failed to establish the essential elements of an official capacity claim or claim of personal involvement of Defendants Webre, Davis, or Beck in any act causing the alleged violation of his constitutional rights.  Thus, his § 1983 claim against Craig Webre, Cantrell Davis, and Karla Beck should be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.[35]

---

[31] *Colle v. Brazos Cty.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).

[32] *See, e.g.*, *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel*, 2009 WL 5125465, at *3.

[33] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009).

[34] *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (Supervisory officials "are not liable for the actions of subordinates on any theory of vicarious liability" and will only be liable if the official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981) (a defendant is liable under § 1983 only if he had personal involvement in the alleged unconstitutional act); *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998) (a supervisory official may be liable for the acts of a subordinate if the plaintiff can establish that the supervisor either failed to supervise or train the subordinate, that a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and the failure to train or supervise amounted to deliberate indifference); *Pierce v. Hearne Indept. Sch. Dist.*, 600 F. App'x 194, 199 (5th Cir. 2015) ("Deliberate indifference in this context ordinarily requires a pattern of similar constitutional violations by untrained employees . . .") (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).

[35] 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

C. **Deliberate Indifference to Serious Medical Needs Claim as to Lt. Jones**

A prisoner, whether pretrial or convicted, may succeed on a claim under § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.[36]  Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[37]  A prison guard may deny an inmate adequate medical care under the same standards.[38]  However, "[m]ere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."[39] Further, the applicable *mens rea* of deliberate indifference demands subjective knowledge of a substantial health risk.[40]

"Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[41]  An inmate's claims of negligent care or his mere disagreement with the speed, quality, or extent of medical treatment received, however, does not give rise to a § 1983 claim.[42]  Indeed, a delay in receiving

---

[36] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[37] *Id*. at 104-05.

[38] *Estelle*, 429 U.S. at 106.

[39] *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).

[40] *Gobert v. Caldwell*, 463 F.3d 339, 348 (5th Cir. 2006)

[41] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Domino v. Tex. Dept. of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

[42] *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (although inmate died, active treatment of his serious medical condition refuted claim of deliberate indifference, even if treatment was negligently administered); *accord Rowe v. Norris*, 198 F. App'x 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); *Marksberry v. O'Dea*, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (alleged inadequate treatment for broken hand failed to state constitutional violation, when inmate was examined by physician and received x-rays and medication); *Williams v. Browning*, No. 03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment alleged he was unable to timely obtain his medications did not establish any substantial harm from the delay and failed to state a claim for deliberate indifference).

medical treatment is only actionable when the delay is caused by defendants' deliberate indifference and the delay results in substantial harm to the plaintiff.[43]

Plaintiff complains of a deliberate indifference by denial of medical care following the October 30, 2020 incident in which he was injured by fellow inmates.[44]  Specifically, he contends that, while he was in triage, Lt. Jones told to Nurse Autumn that neither Plaintiff nor Bruce needed medical attention, which he contends constitutes deliberate indifference and denial of medical care.[45]  He further alleges that LPCC's failure to provide him with Tylenol in triage was an unconstitutional refusal of medical care.[46]

The facts as described by Plaintiff do not suggest any untreated injury that would constitute a serious medical need that night.  Accepting as true Plaintiff's allegation that Lt. Jones told Nurse Autumn that Plaintiff did not need medical care, this statement was not heeded by Nurse Autumn. As Plaintiff testified, and the medical records confirm, Plaintiff was assessed and treated by the nurse after waiting in triage for ten to fifteen minutes after the altercation.[47]  While he may not have been provided Tylenol in triage at 2:33 am, Nurse Autumn did stitch the lacerations on his face.[48]  Further, he received acetaminophen at 8:31 am, roughly six hours after the incident.[49]

Plaintiff continued to suffer neck pain, arm numbness, and burning sensations following the incident.  He testified in his *Spears* hearing that LPCC requires an inmate to write a medical request to see a provider, and that the provider has discretion to choose whether to respond to such a request.  Orso filed two medical request forms after the incident, with the first request roughly

---

[43] *See, e.g.*, *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, *4 (E.D. La. Mar. 29, 2012) (three week delay before seeing a doctor was not unreasonable for nonemergency care).
[44] ECF No. 1.
[45] ECF No. 3 at 7, ¶10.
[46] *Id.* at 8, ¶ 11.
[47] ECF No. 15-1, at 229.
[48] *Spears* testimony; *see also* ECF 15-1, at 229.
[49] ECF No. 15-1, at 121.

two weeks after the altercation.[50]  Plaintiff testified that, in response to his requests, the medical staff performed one x-ray and determined his pain was simply the result of neck spasms.  He claimed that they did not provide him with the x-ray results and the determination did not address his serious concerns.  He asserts that, beyond triage the night of the incident and the x-ray visit, he did not receive any other medication or follow-up care.  He further testified that he did not fill out another medical request because the medical staff refused to do anything for him.

Medical records of sick calls, examinations, diagnoses, and medications may rebut allegations of deliberate indifference.[51]  Plaintiff's medical records[52] reflect that LPCC medical staff saw Orso on several occasions after the altercation,[53] heard and documented his concerns,[54] ordered and performed a cervical spine x-ray,[55] and prescribed him both over-the-counter and prescription-strength pain medication on several occasions.[56]  The x-ray results indicated that Plaintiff had no acute fractures.[57]  The records reflect that LPCC physician Dr. Phillip Nowlan communicated these results to Orso on December 31, 2020.  The notes further reflect that, in

---

[50] *Id.* at 42.

[51] *Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Bejaran v. Cruz*, 79 F. App'x 73, 74 (5th Cir. 2003))).

[52] This Court ordered LPCC's custodian of medical records CorrectHealth to provide Plaintiff with a copy of his medical records on March 25, 2022 (ECF No. 18). CorrectHealth filed a Notice of Compliance attaching a receipt of medical records signed by Plaintiff on September 26, 2022 (ECF No. 19).  This Court's March 25, 2022 Order granted Plaintiff 30 days within which to submit a written memorandum disputing or challenging his medical records.  As of this date, Plaintiff did not file any such objections.

[53] Appointments completed on 11-05-2020, 11-11-2020, 11-12-2020, 11-16-2020, 11-17-2020, 11-30-2020, 12-1-2020, 12-5-2020, 12-14-2020.

[54] *See, e.g.*, ECF No. 15-1 at 30, 35, 42, 197.

[55] ECF No. 15-1 at 31.

[56] Plaintiff prescribed acetaminophen on 10-27-2020. ECF No. 15-1 at 75. Acetaminophen administered twice per day from 10-27-2020 to 10-31-2020. ECF No. 15-1 at 121. Plaintiff prescribed ibuprofen on 11-11-2020. *Id.* at 77. Ibuprofen administered twice per day from 11-12-2020 to 11-14-2020. ECF 15-1 at 123. Plaintiff prescribed ibuprofen on 11-17- 2020. *Id.* at 79. Ibuprofen administered twice per day from 11-17-2020 to 11-19-2020. *Id.* at 123-24. Plaintiff prescribed Aleve on 11-30-2020. *Id.* at 82. Aleve administered twice per day from 11-30-2020 to 12-10-2020. *Id.* at 125-27. Plaintiff prescribed Aleve on 12-15- 2020. *Id.* at 83. Aleve administered daily from 12-15-2020 to 12-25-2020. *Id.* at 127-9. Plaintiff prescribed acetaminophen and methocarbamol (used to treat muscle spasms/pain) on 1-27-2021. *Id.* at 89. Acetaminophen and methocarbamol administered daily from 01-27-2021 to 02-06-2021. *Id.* at 134-37.

[57] ECF No. 15-1 at 32.

response to Dr Nowlan's advice, "patient . . . refused to listen and understand what the problem is [sic] and got up and walked out of visit."[58]

The examinations conducted by LPCC physicians suggest that Plaintiff's injuries were addressed. Further, Plaintiff's medical records indicate that he was provided ongoing care for his injuries. After LPCC medical staff performed an initial assessment, it conducted follow-up assessments, ordered and executed medical imaging, and prescribed pain medication in the ensuing months. As such, Plaintiff's claim of deliberate indifference to serious medical needs should be dismissed.

### D. **Failure to Investigate or Protect Claim**

Plaintiff claims that his constitutional rights were violated by the prison officials' failure to thoroughly investigate the incident or "gang fight" that led to his injuries.[59] Plaintiff correctly pointed out that LPCC failed to comply with the thirty-day grievance filing period set forth in its own Handbook.[60] However, the Fifth Circuit has repeatedly held that an inmate does not have a constitutional right to an adequate and effective grievance procedure, or to have his complaints investigated and resolved to his satisfaction.[61] An inmate has no protected liberty interest in the adequacy or the result of prison administrative grievance procedures.[62] "[A]n alleged § 1983 due process violation for failure to investigate grievances is indisputably meritless."[63] Without a constitutional right at issue, Orso's § 1983 claims against defendants related to the alleged mishandling or non-response to his grievances and related letters are frivolous.

---

[58] ECF No. 15-1 at 33.
[59] ECF No. 3 at 9, ¶ 17-18.
[60] *Id.* at 4.
[61] *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013); *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).
[62] *Smith v. Horton*, 670 F. App'x 872, 873 (5th Cir. 2016) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (emphasis added).
[63] *Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) (citing Geiger, 404 F.3d at 374).

To the extent Plaintiff claims the failure to investigate and punish more inmates demonstrates a deliberate indifference to his safety or a failure to protect him, he has not indicated that the prison officials were aware that a fight or attack would occur or that he was in danger.[64] Plaintiff did not alert the guards of the attack on Bruce, but instead entered Cell 1 to assist Bruce without informing the guards because he believed "the guards don't do anything."[65]

Orso also asserts that these defendants acted jointly in a "conspiracy of silence" to ignore his grievances rather than properly address them. This claim also is frivolous. A § 1983 conspiracy claim requires a plaintiff to allege that the defendants acted together with specific intent to violate a protected constitutional right.[66] "[A] conspiracy claim is not actionable without an actual violation of section 1983."[67] As Orso cannot state a § 1983 claim based on alleged violations or failures in the grievance process, he also cannot base a § 1983 conspiracy claim on the mishandling of or disregard for his grievances.[68] There is no § 1983 conspiracy claim where the alleged conspiracy does not involve a constitutional right. Accordingly, Orso's § 1983 conspiracy claim should be dismissed as frivolous.

### C.  Relief for Failure to Train/Supervise Staff

As a part of his relief, Orso seeks declaratory relief related to the supervisory defendants Webre, Davis, and Beck's alleged failure to train/supervise staff. As Plaintiff has failed to state a

---

[64] *See Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) ("To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection."); *see also Leal v. Wiles*, 734 F. App'x 905, 909 (5th Cir. 2018) (discussing the prison officials' duty to protect inmates and detainees) (applying deliberate indifference as defined by *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994)).

[65] *Spears* testimony.

[66] *McKinney v. McDuffie*, 789 F. App'x 413, 416 (5th Cir. 2019); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (for conspiracy under § 1983, a plaintiff must show "the existence of a conspiracy involving state action and [ ] a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy").

[67] *Pfannstiel*, 918 F.2d at 1187  (citation omitted).

[68] *See Edwards v. Turner*, No. 13-2416, 2014 WL 991920, at *3 (W.D. La. Mar. 13, 2014) ("Because Plaintiff does not have a substantive right to the grievance process, the interference with that process by the defendants does not state a constitutional claim.").

claim for which relief can be granted, this request should be denied as moot.

### RECOMMENDATIONS

Accordingly, for the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's claims against defendants, Lafourche Parish Sheriff Craig Webre, Warden Cantrell Davis, Assistant Warden Karla Beck, each in their supervisory capacity, and Lieutenant Stanley Jones, in his personal capacity, be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for declaratory relief related to supervisory defendants Webre, Davis, and Beck's alleged failure to train and supervise staff be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[69]

New Orleans, Louisiana, this ____ 2nd ____ day of November, 2022.



DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[69] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).